**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

BENJAMIN MUHAMMAD JONES,
ADC #89586                                                                                               PLAINTIFF

5:12CV00189-SWW-JTK

WILLIAM STRAUGHN, et al.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

An Evidentiary Hearing was held in this case before the Court on August 21, 2013. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

**I.     Introduction**

Plaintiff Jones is a state inmate incarcerated at the Maximum Security Unit (MSU) of the Arkansas Department of Correction (ADC). He filed this action pro se, pursuant to 42 U.S.C. § 1983, alleging numerous unrelated allegations against numerous Defendants (Doc. No. 1). By Order dated July 31, 2012, this Court directed the issuance of summons and service of Plaintiff's Second Amended Complaint on Defendants Morris,[1] Williams, and Wooten, with respect to Plaintiff's allegations of excessive force and denial of access to the Courts (Doc. No. 9). The remaining

---

[1]Plaintiff initially identified this Defendant as Andre Morrison (Doc. Nos. 5, 7). Defendants' Answer includes both the names of Artie Morris and Andre Morrison (Doc. No. 25). At trial, Defendants identified this Defendant as Artie Morris.

allegations and Defendants were dismissed on August 20, 2012 (Doc. No. 21).

Specifically, Plaintiff alleges Defendant Morris improperly sprayed him with chemicals on June 22, 2012, and that all three Defendants confiscated and destroyed his legal and personal property.

## II.     Factual Findings

### A.     Hearing Testimony and Exhibits

#### 1.     Plaintiff Benjamin Muhammad Jones

Plaintiff testified he was incarcerated in Cell #29 of punitive isolation on June 21, 2012,[2] when another inmate flooded his cell, causing water to flow into Plaintiff's cell. Plaintiff tried to clean up the water himself, and Defendant Morris, who was taking inmates in that area to shower, approached his cell and asked him to catch the cuffs. When Plaintiff refused, insisting he could clean his own cell, Morris sprayed him with chemicals. Morris and Defendant Williams then took Plaintiff to the shower area, but refused Plaintiff's request to be taken to the infirmary. Plaintiff testified that other inmates were affected by the spray, which blinded him, caused a burning sensation, aggravated his sinuses, and irritated his skin.

Defendants confiscated Plaintiff's property – which consisted of a Koran, Bible, prayer cap, prayer book, prayer rug, and three civil lawsuits – and never returned it. Plaintiff was convicted of several disciplinary charges as a result of the incident, and admitted that he threw water on Defendant Williams, but only after he was sprayed with mace. Defendants' Exh. 12. Plaintiff filed and exhausted a grievance about the spraying, MX 12-01730. Defendants' Exh. 18. Although

---

[2] Although Plaintiff initially stated the incident occurred on June 21, 2012, all records of the incident and other testimony indicate that it occurred on June 22, 2012.

Plaintiff filed an informal grievance about his property, he did not receive a response and later wrote a request for an interview. Defendants' Exh. 17A. Plaintiff did not visit the infirmary on June 22, 2012, and denied that he refused medical attention after the incident.

### 2. Nicola Kelly

Ms. Kelly is a corrections officer at the MSU, in charge of property. She was not present at the Unit on the date of the incident, June 22, 2012, and did not return to her office until June 25, 2012. She did not receive any of Plaintiff's property during that time, and stated it was possible that officers brought the property to her office on June 22, 2012, and then returned it to Plaintiff prior to her return. Her property records do not reflect property taken from Plaintiff during that time. She identified some of Plaintiff's property records during other time periods, but stated she could not find any from that date. See Defendants' Exh. 24.

### 3. Rockmon Abdullah

Mr. Abdullah is an inmate at the MSU, who was housed in Cell #17 of the punitive isolation area on the date of the incident. He did not see Plaintiff escorted to the shower from his cell, but knew mace was sprayed because other inmates complained about it. Defendant Morris came to his cell during shower call and Abdullah asked him if they sprayed Plaintiff, and Morris responded that he did not need to worry about that. Abdullah smelled the spray on Morris, but Morris denied that he sprayed someone and said he was dashed.

Abdullah testified that Plaintiff's property included a prayer cap and prayer rug, and that sometimes officers throw away inmates' property in retaliation, and other times property gets misplaced. He stated that he could see mace on the floor, bed, and walls in the picture of Plaintiff's cell (Defendants' Exh. 8), and that the red stains on that picture, and the picture of the hallway

(Defendants' Exh. 10) were mace.

### 4. Barbara Williams

Ms. Williams is the inmate grievance supervisor at the Unit, and reviewed Plaintiff's grievance appeal history. Defendants' Exhs. 17, 17A, 18, 27. Exhibit 17 was identified as an eight-page print-out listing every grievance filed by Plaintiff since June 7, 2012, which was processed to a step 2 grievance. Exhibit 18 is the grievance Plaintiff filed and exhausted about the excessive force incident, MX 12-01730. Exhibit 17A is an informal grievance Plaintiff dated July 1, 2012, but which was not processed to the formal grievance stage, because it was not given a grievance number. According to the grievance procedure, Administrative Directive 12-16, an inmate must file a step one grievance (informal) within fifteen days of the incident, and submit it to a problem-solver who will try and resolve the issue. If the inmate does not receive a response within three days, he can take the same form and submit it to a grievance officer as a step two or formal grievance. At that time, the grievance is given a number and recorded in the system. Williams testified that Exhibit 17A was never processed to step two, because it was not assigned a number. In addition, she reviewed Plaintiff's grievance records and found no exhausted grievance concerning his allegation of destruction of property and denial of access to the courts.

In reviewing grievance MX 12-01730 (excessive force), Williams also noted a request to view the video footage from the incident. Defendants' Exh. 18, p. 7. However, the response to the request stated that since no chemical agents were used in the incident, the hand-held video camera was not used, and the stationary camera in the hall outside Plaintiff's cell would not show any activity inside Plaintiff's cell. Id., p. 8.

### 5. Defendant Artie Morris

Artie Morris has worked at the ADC for twelve years as a correctional officer. Approximately 4 a.m. on June 22, 2012, he heard Plaintiff call his name from his cell. Morris opened the steel door, walked inside, and was dashed with water by Plaintiff. He shut the door, notified other officers of the incident, and told officers to cut off Plaintiff's water, because he had flooded his cell. About 4:20 a.m., he gave Plaintiff a direct order to submit to restraints, and Plaintiff refused. Officers Wooten and Williams arrived and Plaintiff agreed to the restraints. Although Wooten and Morris took him to the shower area while an inmate porter cleaned the cell, Plaintiff did not take a shower at that time. Because Plaintiff had used his food tray to hold the water which was thrown on him, he was placed on alternative meals and supposed to be weighed in the infirmary. However, Plaintiff refused to go to the infirmary, so he was returned to his cell. Morris completed an incident report and wrote a major disciplinary against Plaintiff later that day. Defendants' Exhs. 3, 12.

Morris identified photographs of Plaintiff's cell which were taken on the same date, and described water on the floor. Defendants' Exhs. 8,10. He stated that if he had sprayed Plaintiff with a chemical spray, there would be evidence of the bright orange spray on the walls or on the bed, and also on Plaintiff's white prison uniform. He also stated that the red places on the photographs identified by inmate Abdullah as mace, actually are reflections from the Exit sign in the hallway. Morris identified a picture taken of him on that day, which showed numerous wet spots on his shirt after Plaintiff threw water on him. Defendants' Exh. 9. He denied that another inmate was responsible for the flooding of the cell, stating that the water came from Plaintiff's cell. He also stated that inmate Abdullah would not have been able to see any of the incident, because his cell was

located quite a bit of distance away.

Morris denied taking or destroying Plaintiff's property, and stated that paper on the floor of Plaintiff's cell was damaged by the water and thrown away by the inmate porter. Morris denied seeing any other personal property in Plaintiff's cell.

### 6. Defendant Melvin Wooten

Defendant Morris called Wooten for assistance on the morning of the incident, and when Wooten arrived, he saw that Plaintiff's cell was flooded. Initially, Plaintiff would not submit to restraints, but agreed after Defendant Williams arrived. Wooten completed an incident report later that day, but did not complete a use of force report because pepper spray was not used. See Defendants' Exhs. 6. He did not see or smell any evidence of pepper spray, and did not destroy or remove Plaintiff's property. He did see some papers on the floor, but no other property, and stated that if Plaintiff had property in his cell it would have been inventoried and taken by the sergeant (Defendant Morris). He also witnessed a form which Plaintiff refused to sign, entitled a "Release from Responsibility from Medical Examination/Treatment." Defendants' Exh. 6.

### 7. Defendant Joseph Williams

Defendant Williams has been employed with the ADC nearly twelve years, and is the supervisor of Defendants Morris and Wooten. On June 22, 2012, Morris called him and asked him to come to the isolation area because Plaintiff flooded his cell and dashed Morris with water. When Williams arrived, he observed a lot of water in the cell and hallway, and ordered Morris and Wooten to remove Plaintiff and take him to the shower area while the cell was cleaned. He understood that Plaintiff had used his food tray to hold the water with which he dashed Morris, so he ordered that Plaintiff be placed on alternative meals. He saw no evidence of pepper spray, and noted that Plaintiff

showed no signs of distress.

Williams completed an incident report on that same day, which stated that Morris was dashed with water by Plaintiff, and that after he was taken to the shower area, he refused to be seen by the infirmary. Defendants' Exh. 4. He also completed a safety officer accident investigation report following the incident, which is intended to assess incidents and help to determine how they can be prevented. Defendants' Exh. 5. After the incident, he also reviewed the video from the camera in the hallway and did not see anything relevant to the incident.

### III.  Legal Conclusions

#### A.  Exhaustion

According to the Prison Litigation Reform Act (PLRA),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, 532 U.S. 731, 741 n.6 (2001), the United States Supreme Court held that, in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." In addition, Eighth Circuit Court of Appeals held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000)

(quoting Castano v. Nebraska Dep't of Corr., 201 F.3d 1023, 1025 (8th Cir. 2000). In Johnson v. Jones, 340 F.3d 624, 627-8 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." (Emphasis in original.) Finally, in Jones v. Bock, 549 U.S. 199, 218 (2007), the United States Supreme Court held that, while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

Defense witness Barbara Williams testified that she reviewed Plaintiff's grievance records and did not find an exhausted grievance about the property/denial of access to the courts claim. In addition, she stated that the informal grievance Plaintiff wrote about the property was never processed to the second step (formal grievance stage), and that Plaintiff did not exhaust his remedies as to that grievance. Although Plaintiff stated that he did not receive a response to the informal grievance he filed, Ms. Williams reviewed the ADC procedure which provides that inmates who do not receive a response within three days may proceed by submitting the formal grievance to a grievance officer. See Defendants' Exh. 26, AD 12-16.IV.E.11. The Court finds no evidence that Plaintiff followed this procedure by filing a formal grievance, and therefore, that he failed to properly exhaust this issue against the Defendants.

**B.     Excessive Force**

Although the Eighth Amendment "does not mandate comfortable prisons," it does "impose a duty on prison officials to provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment also protects inmates from the "unnecessary and

9

wanton infliction of pain" by other inmates and correctional officers. Whitley v. Albers, 475 U.S. 312, 319 (1986). Officers are permitted to use force reasonably "in a good-faith effort to maintain or restore discipline," but not "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 9, (1992). In such situations, courts should consider whether there was an objective need for force, the relationship between such need and the amount of force used, the threat reasonably perceived by the correctional officer, any effort to temper the severity of their response, and the extent of the inmate's injury. Id., 503 U.S. at 999.

In this particular case, the Court need not consider these factors at all, because the Court finds absolutely no evidence that force was used. Plaintiff's testimony was not credible, and the overwhelming evidence set forth in the officers' testimonies, incident reports, and the disciplinary violation report, shows that Plaintiff flooded his cell, dashed Morris with water, and then tried to cover it up with a story about excessive force. The Court found no evidence that pepper or chemical spray was used, and even if it was used, no evidence that it was used excessively or in an unreasonable manner. Therefore, the Court finds that Plaintiff did not carry his burden of showing by a preponderance of the evidence that Defendant Morris acted unreasonably or in bad faith.

**III. Conclusion**

In conclusion, the Court finds that Plaintiff did not prove his claims against Defendants by the preponderance of the evidence, and that Defendants should have judgment against Plaintiff on his claims against them. Accordingly,

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants have judgment against Plaintiff on his claims of denial of access to the courts and excessive force.

2.	Plaintiff's denial of access to the courts claim be DISMISSED without prejudice.

3.	Plaintiff's excessive force claim be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 30th day of August, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE